| | |
|---|---|
| River Light V, L.P. and Tory Burch LLC, Plaintiffs, <br><br>v.<br><br>Emily Guzman Tanaka, Defendant. | )<br>)<br>)<br>) Civil Action No. 17-22843-Civ-Scola<br>)<br>) |

### Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment

River Light V, L.P. and Tory Burch LLC (collectively "Tory Burch") complain that Emily Guzman Tanaka has offered and sold counterfeits of their products through eBay. The complaint is comprised of eight counts: federal trademark counterfeiting (count one); federal trademark infringement (count two); federal unfair competition (count three); federal trademark dilution (count four); federal copyright infringement (count five); federal false advertising (count six); Florida trademark dilution and injury to business reputation (count seven); and "common law" trademark infringement and unfair competition (count eight). (Compl., ECF No. 1.) Tory Burch seeks summary judgment on all eight counts. (Pl.'s Mot. for Summ. J., ECF No. 29, 2.) Tanaka maintains summary judgment is not warranted because Tory Burch has not shown that each of the complained of eBay transactions were wrongful; Tanaka thought what she was doing was legal; and Tory Burch has failed to police its own marks. (Def.'s Resp., ECF No. 32, 3–4.) For the reasons that follow, the Court **grants in part and denies in part** Tory Burch's motion's motion for summary judgment. (**ECF No. 29**.)

1. **Legal Standard**

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S.

144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, documents, depositions, answers to interrogatories, admissions, or other materials, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24; Fed. R. Civ. P. 56(c)(1)(A). The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Id.* at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Morrison*, 323 F.3d at 924.

### 2. Background[1]

Since 2004, Tory Burch has grown into a billion dollar fashion company with more than 3,000 employees and more than 190 Tory Burch stores worldwide. For over a decade, Tory Burch, together with its authorized licensees, has used the distinctive and famous logo depicted below as its core branding element in connection with the sale of its distinctive style of handbags, wallets, jewelry, clothing, footwear, accessories, eyewear, fragrance, housewares, and other products:



Tory Burch has invested significant time, energy, and hundreds of millions of dollars in advertising, promotion, and offering of its goods and services under the Tory Burch logo, or variations thereof, which appears on virtually all of Tory Burch's products. Tory Burch's products are distributed through a

---

[1] Unless noted otherwise, the Court deems the following facts undisputed.

carefully controlled network of authorized retailers, including high-end department stores, select quality boutiques, and toryburch.com.

Tory Burch's complaint centers on its allegations that Tanaka has been operating an extensive counterfeiting operation that includes the sale of counterfeit Tory Burch products through eBay.

3. **Discussion**

A. **Federal Trademark-Infringement and Unfair Competition Claims (Counts Two and Three)**

To prevail on a claim of trademark infringement, Tory Burch must demonstrate that (1) it owns trademark rights in the marks at issue and (2) Tanaka adopted a mark or name that is confusingly similar to the Tory Burch trademarks. *Frehling Enterprises, Inc. v. Intl. Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999); 15 U.S.C. § 1114(1) (a defendant is liable for infringement, if, without consent, she uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" which "is likely to cause confusion, or to cause mistake, or to deceive").

To satisfy the first element, Tory Burch must establish that it owns prior rights in the marks at issue. Tory Burch "owns numerous trademark registrations and applications for the Tory Burch Trademarks for a variety of goods and services, including handbags, wallets[,] and jewelry." (Pl.'s Stmt. of Facts ¶ 4; ECF No. 29-1, 2.) Further, because Tory Burch's logo was registered in 2009 and has been in continuous use since, the mark has become incontestable. *River Light V, L.P. v. Lin & J Intern., Inc.*, 13CV3669 DLC, 2014 WL 6850966, at *9 (S.D.N.Y. Dec. 4, 2014) ("A mark's registration with the PTO creates a presumption that the mark is valid and entitled to protection; a registered mark becomes 'incontestable' after five years of continuous use, barring many defenses to alleged infringement.") Although Tanaka claims the facts supporting Tory Burch's ownership of the trademark are in dispute, the only fact she offers to support her opposition is that she saw other sellers on eBay "reselling" the same items she was selling and so she assumed it was legal. (Def.'s Stmt. of Facts ¶¶ 1–21, ECF No. 32-1, 2; Tanaka's Decl. ¶ 4, ECF No. 32-2, 1.) This fails to overcome Tory Burch's showing that it owns valid and enforceable rights in the Tory Burch trademarks.

In order to evaluate the second element, that Tanaka's use of the marks creates a likelihood of confusion, the Court must consider a number of factors: (1) the type of mark; (2) the similarity of the mark; (3) the similarity of the products the marks represent; (4) the similarity of the parties' retail outlets (trade channels) and customers; (5) the similarity of the advertising media used; (6) the defendant's intent in using the mark; and (7) actual confusion.

*Frehling*, 192 F.3d at 1335. "The extent to which two marks are confusingly similar cannot be assessed without considering all seven factors to ensure that the determination is made in light of the totality of the circumstances." *Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1488 (11th Cir. 1987). After considering all seven factors, the Court finds Tory Burch has established that Tanaka's activities create a likelihood of confusion.

First, the Tory Burch logos are strong marks: they are "recognized worldwide and have garnered significant, unsolicited media attention," covered by various media outlets: *Vogue*, *Fortune*, CBS News, *Delta Sky*, NBC's Today Show, *Forbes*, *The Wall Street Journal*, *The Denver Post*, and *The New York Times*. (Pl.'s Stmt. at ¶¶ 15–16.)[2]

Second, Tanaka does not dispute that the marks on the products Tanaka sold "are not just similar, but identical, to the Tory Burch Trademarks." (*Id.* at ¶ 32 (emphasis in original).)

Third, the handbags, wallets, and jewelry that Tanaka sold were "knock-offs of genuine Tory Burch Trademarks." (*Id.* at ¶ 33.) The parties' products are thus identical and very likely to cause confusion. Tanaka's opposition that "[c]ertain of the goods [she] sold were purchased directly from [Tory Burch's] authorized sellers" (Def.'s Stmt. at ¶ 33) does not create a genuine issue of material fact on this issue. To begin with, this "fact" is far too vague to overcome Tory Burch's presentation. Additionally, even if true, it would still allow Tory Burch to prevail on the items that Tanaka did not purchase from it directly.

Fourth, the similarity of the parties' trade channels and customers increases the likelihood of confusion. Tanaka does not dispute that both she and Tory Burch sell their products through online channels. (Pl.'s Stmt. at ¶ 35.)

Fifth, to the extent Tanaka advertises her products, her marketing channels inevitably overlap with Tory Burch's because Tory Burch products are promoted in virtually all available media. The gist of Tanaka's objection to this factor's weighing in favor of confusion is her claim that she merely listed her items on eBay and therefore didn't actually advertise. The Court finds Tanaka's argument unworkable. First, Tanaka's listings on eBay are indeed a form of advertising her products: it is how she promotes, markets, and offers her items for sale. Further, where parties are direct competitors in an industry, the Court can presume that the methods of doing business and advertising channels are similar. *See Nailtiques Cosmetic Corp. v. Salon Scis., Corp.*, 96-2709-CIV-

---

[2] Tanaka's opposition to this point—that she saw other sellers on eBay "reselling" the same items she was selling (Def.'s Stmt. at ¶¶ 1–21)—is, again, unavailing.

NESBITT, 1997 WL 244746, at *3 (S.D. Fla. Jan. 10, 1997) (Nesbitt, J.) (noting that since "the parties are direct competitors in the nail products industry, it follows that the methods of doing business and advertising channels are similar").

Sixth, Tory Burch has presented overwhelming evidence of Tanaka's bad faith. Tanaka's products featured counterfeit packaging and Tanaka attached a tag to each of her products that said the item was "100% guaranteed authentic." (Pl.'s Stmt. at ¶ 25.) This, combined with Tanaka's admission that she "was aware of the Tory Burch brand prior to selling items on eBay" (*id.* at ¶ 37), is enough to show this factor weighs in Tory Burch's favor: Tanaka has not presented any evidence countering the facts that show she used Tory Burch's mark for the purpose of "deriving benefit from the reputation of the plaintiff." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 977 (11th Cir. 1983).

With respect to the seventh factor, Tory Burch concedes it has not established actual confusion for the purposes of its motion. (Pl.'s Mot. at 12.) This, however, is not fatal to showing the likelihood of confusion. In fact, "such evidence is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that [Tanaka] is attempting to 'palm off' [her] goods as genuine Tory Burch merchandise." *Tory Burch LLC v. Partnerships and Unincorporated Associations Identified on Sched. A*, 13 C 2059, 2013 WL 1283824, at *4 (N.D. Ill. Mar. 27, 2013).

Tanaka has not set forth any argument or facts rebutting Tory Burch's showing that her activities are likely, if not certain, to cause confusion regarding the origin of the products she sells. Instead she complains that Tory Burch "fails to make any showing as to which transactions in particular are alleged to be either infringing or counterfeit." (Def.'s Resp. at 4.) However, Tory Burch has presented the declaration of Wendy Lang Kaplowitz, in-house counsel for Tory Burch. Kaplowitz provides a side-by-side comparison showing a sampling of counterfeit items Tanaka offered for sale through eBay. The series shows five items Tanaka displayed and offered on eBay, clearly exhibiting the Tory Burch logo, next to the actual items Tory Burch sells. (Kaplowitz Decl. at ¶ 25, ECF No. 28-1, 8–10; Pl.'s Stmt. at ¶ 23.) The following is but one example:

| Authentic Tory Burch Product | Tanaka's Product |
|---|---|
| | |

(Pl.'s Stmt. at ¶ 23.)[3] Thus, as to at least these five items, the record establishes there is no genuine dispute as to Tanaka's infringing conduct.

Additionally, Tory Burch has submitted a 374-page exhibit, composed of sales records produced by Tanaka, showing transactions from her eBay account, selling hundreds of Tory Burch items. (Sealed Sales Records, ECF No. 33.) Tory Burch relies on these records—Tanaka's own records—to support its allegations regarding the extent of Tanaka's counterfeiting enterprise. (Pl.'s Stmt. at ¶ 29.) In response, Tanaka merely complains that Tory Burch has overstated the number of counterfeit items she sold. This is not enough to overcome Tory Burch's showing that it is entitled to summary judgment with respect to at least some of the items and transactions that Tory Burch has identified.

Finally, since the "legal standard for unfair competition . . . and trademark infringement under [] the Lanham Act [have] been held to be essentially the same," Tory Burch is entitled to summary judgment on its federal unfair competition claim as well. *Turner Greenberg Associates, Inc. v. C & C Imports, Inc.*, 320 F. Supp. 2d 1317, 1330 (S.D. Fla. 2004) (Cohn, J.)

---

[3] Tanaka has not properly disputed this fact. Instead, she merely labels this fact as "Disputed" and complains that Tory Burch "has not shown that the images depict products sold by [Tanaka], or that the products pictured are counterfeit or otherwise infringing." (Def.'s Stmt. at ¶ 23.) Contrary to the requirements of Federal Rules of Civil Procedure 56(c)(1), Tanaka has not cited to anything in the record to support her assertion nor has she "show[n] that the materials cited do not establish the absence . . . of a genuine dispute, or that [Tory Burch] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The Court thus deems this fact admitted.

(noting that the analysis for the two claims may be conducted simultaneously), *aff'd*, 128 Fed. App'x 755 (11th Cir. 2005) (unpublished).

### B. Counterfeiting Claim (Count One)

Tory Burch also alleges that the products Tanaka sold were counterfeit. Federal law protects against the sale of goods with "counterfeit" trademarks. The Lanham Act defines "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Under section 34(d) of the Lanham Act, a "counterfeit mark" is "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use . . . ." 15 U.S.C. § 1116(d)(1)(B)(i). Tanaka does not dispute—or at least does not properly dispute for the purposes of responding to a motion for summary judgment—that Tory Burch owns federal registrations for all of the marks at issue in this case. (Pl.'s Stmt. at ¶ 4; Def.'s Stmt. at ¶ 1–21 (noting only that she "disputes the fact that [Tory Burch] retains the right to enforce its mark" because "[a]t the time of [her] eBay listings, eBay was replete with products similar or identical to those" she was selling).) "Trademark counterfeiting occurs by producing or selling a product that bears a 'counterfeit' trademark." *Sony Computer Ent. Am., Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 985 (N.D. Cal. 1999). Tanaka does not dispute that she sold items with marks identical to, and substantially indistinguishable from, Tory Burch's marks. (Pl.'s Stmt. at ¶ 22; Def.'s Stmt. at ¶ 22 (denying the allegation only to the extent she has not herself "designed or manufactured the products in question" and that she only "resold items on eBay that she previously purchased").)

As set forth by Tory Burch, a side-by-side comparison of Tanaka's use of counterfeit reproductions of the registered Tory Burch trademarks on her products plainly demonstrates that the handbags, wallets, and jewelry Tanaka sold are substantially indistinguishable from Tory Burch's products considering the overall impression of the products, including their size, color, mark placement, and design. *River Light*, 2014 WL 6850966, at *16 ("even a side-by-side comparison reveals few differences"). The Court finds Tory Burch has established, and Tanaka has not rebutted, that there is no genuine of issue of material fact with respect to its counterfeiting claim.

### C. Federal Dilution Claim (Count Four)

Tory Burch claims Tanaka's activities have, in violation of the Lanham Act, diluted and continue to dilute the Tory Burch marks. Dilution may occur by either tarnishment or blurring. "Tarnishment in the trademark sense occurs

when a famous mark is linked to products of poor quality or is portrayed in an unwholesome manner." *Victoria's Cyber Secret Ltd. Partn. v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1355 (S.D. Fla. 2001) (King, J.) (citations and quotations omitted). Blurring, on the other hand, "occurs when a defendant uses a plaintiff's trademark to identify the defendant's goods or services, creating the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Victoria's Cyber Secret*, 161 F. Supp. 2d at 1355 (quoting *Panavision, Int'l, v. Toeppen,* 141 F.3d 1316, 1326 n. 7 (9th Cir.1998)). Dilution causes harm by removing the reputation of the trademark owner from the owner's control. Thus, a trademark owner can prove dilution of the distinctive quality of its mark through use of an identical or similar mark by another. *Freedom Sav. and Loan Ass'n v. Way*, 757 F.2d 1176, 1186 (11th Cir. 1985) (noting that although "[d]ilution requires some proof that the use of a trademark decreases its commercial value," "it is enough" if a trademark owner shows "that the defendant has made significant use of a very similar mark").

Tory Burch maintains that Tanaka is diluting its marks through blurring. In order to evaluate whether a defendant's use of a mark is likely to cause dilution by blurring, the Court may consider certain relevant factors:

> (i) [t]he degree of similarity between the mark or trade name and the famous mark[;] (ii) [t]he degree of inherent or acquired distinctiveness of the famous mark[;] (iii) [t]he extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark[;] (iv) [t]he degree of recognition of the famous mark[;] (v) [w]hether the user of the mark or trade name intended to create an association with the famous mark[; and] (vi) [a]ny actual association between the mark or trade name and the famous mark.

*Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1267 (N.D. Fla. 2009) (citing 15 U.S.C. § 1125(c)(2)(B)). Tory Burch has carried its burden of showing that there is no genuine issue of material fact that these factors weigh heavily in its favor.

First, as presented by Tory Burch, the marks on Tanaka's products are identical in appearance to Tory Burch's marks. (Pl.'s Stmt. at ¶ 32; Def.'s Stmt. at ¶ 32 ("Undisputed.").) Second, the Tory Burch marks are famous and commercially strong marks. (*Id.* at ¶ 9.) Third, Tory Burch is engaged in substantially exclusive use of the marks, evidenced by its federal-trademark registrations, significant enforcement efforts, and stringent third-party licensing arrangements. (*Id.* at ¶ 11.) Fourth, as a result of Tory Burch's continuous and widespread promotion of the marks, there is no doubt the

public recognizes and associates the Tory Burch marks with Tory Burch's goods, services, and goodwill. (*Id.* at ¶ 21.) <u>Fifth</u>, the record shows Tanaka has demonstrated an intent to create an association with Tory Burch by passing off her products as "100% guaranteed authentic" Tory Burch goods. (*Id.* at ¶ 24–25.) <u>Lastly</u>, it is inconceivable that customers encountering Tanaka's wares would not associate them with Tory Burch products. Tanaka vaguely attempts to rebut Tory Burch's showing on these factors by complaining about others on eBay who were also using the mark and her irrelevant claim that she "did not knowingly engage in any unlawful activities." (Def.'s Stmt. at ¶¶ 1–21, 25.) Tanaka's position is unavailing and fails to introduce a genuine issue of material fact with respect to any of these factors.

### D. Federal-False-Advertising Claim (Count Six)

Tory Burch also claims that it is entitled to summary judgment on its federal-false-advertising claim. The elements of a claim under the Lanham Act for false advertising are:

> (1) the ads of the opposing party were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the movant has been—or is likely to be—injured as a result of the false advertising.

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002).

The facts here show that Tanaka falsely advertised her products as "Guaranteed Authentic" Tory Burch items through her eBay account in interstate commerce. (Pl.'s Stmt. at ¶ 25; Def.'s Stmt. at ¶ 25 (claiming only that she was unaware that her activities were unlawful)); *see also Swatch S.A. v. New City, Inc.*, 454 F. Supp. 2d 1245, 1252 (S.D. Fla. 2006) (Huck, J.) (noting that even just a false website claim that a product is covered by a manufacturer's warranty can "satisfy the first element of a Lanham Act false advertising claim"). Because Tanaka's representations were false, Tory Bruch need not present evidence of consumer deception. *Johnson & Johnson*, 299 F.3d at 1247. Next, a plaintiff may prove materiality by showing that a defendant "misrepresented an inherent quality or characteristic of the product." *Johnson & Johnson*, 299 F.3d at 1250 (quotation omitted). Here, Tanaka's deception is material in that it concerns an inherent quality or characteristic of her offerings and there can be no dispute that her statements influenced the purchasing decisions of her customers. Tanaka sold her

products within the same price range as genuine Tory Burch items, suggesting to buyers her goods were authentic. (Pl.'s Stmt. at ¶ 38.) Her "guarantee" that the items were authentic falsely assured consumers of the quality and craftsmanship of her goods and thereby bolstered consumer confidence. Notwithstanding Kaplowitz's direct testimony supporting these facts, Tanaka complains that Tory Burch "has not made a showing of the comparative prices between [its] items[] and [Tanaka's] items" and that she did not "undert[ake] any efforts to bolster consumer confidence in her goods." (Def.'s Stmt. at ¶ 38.) Once again, contrary to the requirements of Federal Rules of Civil Procedure 56(c)(1), Tanaka has not cited to anything in the record to support her assertion nor has she "show[n] that the materials cited do not establish the absence . . . of a genuine dispute, or that [Tory Burch] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The Court thus deems these facts admitted.

Next, with respect to the effect on interstate commerce, Tanaka's sales records show that her products were offered and sold on a nationwide basis. (Sealed Sales Records, ECF No. 33.) And, lastly, based on the record presented, there is no genuine dispute that Tanaka's false advertising has injured, and will continue to injure, Tory Burch. Tanaka's false advertising deceives the public into believing she and her wares are affiliated with Tory Burch. Based on this deception, buyers have been duped into buying Tanaka's products and not Tory Burch's. Again, Tanaka's complaints that many other sellers on eBay were doing the same thing and that she thought what she was doing was legal are unavailing. None of these allegations creates a genuine issue of material fact with respect to Tory Burch's false advertising claim. As a result, Tory Burch is entitled to summary judgment on its false-advertising claim.

### E. Federal Copyright Infringement Claim (Count Five)

Tory Burch lastly claims that it is entitled to summary judgment on its copyright infringement claim. To prevail on a prima facie claim of copyright infringement, Tory Burch must demonstrate (1) that it owns a valid copyright in the Tory Burch mark; and (2) that Tanaka copied original elements of the design. *Calhoun v. Lillenas Publg.*, 298 F.3d 1228, 1232 (11th Cir. 2002).

Based on the evidence presented, Tory Burch has demonstrated the absence of a genuine issue of material fact with respect to both elements. First, Tory Burch has established that it applied for and received a certificate of copyright for its logo copyright. (Pl.'s Stmt. at ¶ 6.) This is prima facie proof, that Tanaka has not rebutted, of the existence of a valid copyright. *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996).

Second, Tory Burch has demonstrated that there is no genuine issue of material fact with respect to the second element as well. Under this element, Tory Burch must establish that "the alleged infringer actually used the copyrighted material to create h[er] own work." *Bateman*, 79 F.3d at 1541 (quotation omitted). "Direct evidence of copying, however, is rare and plaintiffs generally prove copying by introducing circumstantial evidence showing: (1) the defendant had access to plaintiff's work, and (2) that the defendant's work is substantially similar to the plaintiff's." *Kevin Harrington Enterprises, Inc. v. Bear Wolf, Inc.*, 98-CV-1039, 1998 WL 35154990, at *7 (S.D. Fla. Oct. 8, 1998) (Bandstra, Mag. J.) Here, Tanaka had access to the Tory Burch copyright based on Tory Burch's widespread and extensive use of the design on its products. *Id.* ("It is clear that Defendant either viewed Plaintiff's copyrighted work or had a reasonable opportunity to view the work.") (alterations and quotations omitted). Indeed, Tanaka admits that she "was aware of the Tory Burch brand prior to selling items on eBay." (Pl.'s Stmt. at ¶ 37.) And simple side-by-side comparisons of the Tory Burch copyright and Tanaka's eBay displays and products show that Tanaka has reproduced identical copies. This "wholesale copying" of Tory Burch's copyrighted material "leaves little doubt that defendant copied plaintiff's protectable expression." *Kevin*, 1998 WL 35154990, at *8.

### F. Tanaka's Affirmative Defenses

As mentioned above, Tanaka attempts to refute the entirety of Tory Burch's motion by generally arguing (1) she believed her transactions were legal; (2) Tory Burch is equitably estopped from pursuing its claims against Tanaka; and (3) Tory Burch has waived its right to pursue its claims. Tanaka's challenges miss the mark.

To begin with, "under the Lanham Act, sellers of counterfeit products bear strict liability." *N.V.E., Inc. v. Famous*, CIV.A.08-1633(FLW), 2009 WL 2194538, at *3 (D.N.J. July 22, 2009). Tory Burch, thus, does not have to prove that Tanaka intended to sell counterfeit products. *Id.*; *see also Microsoft Corp. v. Image & Bus. Sols., Inc.*, CV 05-6807ABC(RCX), 2007 WL 2874430, at *7 (C.D. Cal. May 4, 2007) ("Copyright and trademark infringement are strict liability offenses, and the state of mind of the defendant is not relevant to the determination of whether an infringement has occurred.") Tanaka's beliefs as to the legality of her actions are therefore irrelevant.

Nor can Tanaka avoid summary judgment based on her passing mention of either equitable estoppel or waiver. Tanaka's showing falls far short of establishing any genuine issues for trial regarding the claims addressed above. First, "[e]quitable estoppel is based on principles of fair play and essential

justice and arises when one party lulls another party into a disadvantageous legal position." *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1076 (Fla. 2001). Such a defense requires a showing that "(1) the party against whom estoppel is sought made a representation about a material fact that is contrary to a position it later asserts, and (2) the party seeking estoppel detrimentally relied on that representation." *SourceTrack, LLC v. Ariba, Inc.*, 958 So. 2d 523, 526 (Fla. 2d Dist. App. 2007). Tanaka has not sufficiently alleged, never mind shown, either element. Likewise, "[t]o establish a waiver defense, a party must bring forth proof of an intent to relinquish a known right." *Am. Historic Racing Motorcycle Ass'n, Ltd. v. Team Obsolete Promotions*, 33 F. Supp. 2d 1000, 1007 (M.D. Fla. 1998), *aff'd sub nom. Am. Historic v. Team Obsolete*, 233 F.3d 577 (11th Cir. 2000). Tanaka has made no showing that Tory Burch intended to relinquish its trademark rights.

### G. Tory Burch's Remaining Claims (Counts Seven and Eight)

Tory Burch also seeks summary judgment on its Florida trademark dilution and injury to business reputation claim (collectively, count seven) and its "common law" trademark and unfair competition claim (collectively count eight). Tory Burch's motion is denied with respect to these two counts.

Although Tory Burch notes, when discussing its federal-trademark-dilution claim, that "[i]njury to business reputation can also be established by proving the tarnishment of the mark" (Pl.'s Mot. at 16), it makes no other possible mention of its Florida injury-to-business-reputation claim anywhere else in its motion. Similarly, Tory Burch never makes any reference to its Florida, as opposed to its federal, dilution claim. Summary judgment as to count seven is therefore not warranted.

Regarding count eight, Tory Burch's common-law trademark and unfair-competition claims, Tory Burch mentions in a footnote that it believes "the test for state and common-law trademark infringement and unfair competition is the same as that for federal trademark infringement and unfair competition." (Pl.'s Mot. at 8 n. 2.) But, to begin with, Tory Burch has not identified which state's law it believes applies to this count. Without knowing which state law applies, the Court has no way of evaluating whether Tory Burch's burdens under both state and federal law are coextensive. *See Knights Armament Co. v. Optical Sys. Tech., Inc.*, 568 F. Supp. 2d 1369, 1377 (M.D. Fla. 2008) (noting that a plaintiff, in a similar context, must, at a minimum, "assert[] what state law entitles it to relief.") Additionally, the cases Tory Burch relies on for this proposition are unavailing. Although Tory Burch quotes the Eleventh Circuit accurately—"the elements of common law and statutory trademark infringement are the same"—the sentiment is taken out of context. *Tally-Ho,*

*Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1025 (11th Cir. 1989). The court in that case had under consideration a comparison between Florida case law and the Florida Trademark Act. *Id.* That case, then, does not support Tory Burch's theory that it can succeed on its generically identified "common law" trademark and unfair competition claim simply because it has succeeded on its federal-trademark claim. Tory Burch's cursory reference here is insufficient to support its motion for summary judgment.

### 4. Conclusion

As set forth above, Tanaka has not been able to overcome Tory Burch's showing that there is no genuine issue as to any material fact with respect to Tanaka's liability as to counts one through six. On the other hand, Tory Burch has not carried its burden with respect to counts seven and eight. Further, although Tory Burch has established its entitlement to injunctive relief and damages, the Court must still make a determination regarding the *amount* of damages. Thus counts six and seven and issues related to the measure of damages with respect to counts one through six remain on the Court's calendar for resolution during the trial period beginning November 13, 2018.

Accordingly, the Court **grants** Tory Burch's motion, **in part**, with respect to Tanaka's liability as to counts one through six, but **denies** it, **in part**, with respect to counts seven and eight and the amount of damages. (**ECF No. 29**.)

Based on the Court's ruling, the Court orders the parties to file an amended joint pretrial stipulation by **9:00 a.m. on November 6, 2018**. For the same reason, the Court also orders the parties to file amended proposed jury instructions on or before **November 8, 2018**. Any other outstanding issues will be addressed at the calendar call set for 9:00 a.m. on November 6, 2018.

**Done and ordered** in chambers at Miami, Florida on November 2, 2018.

Robert N. Scola, Jr.
United States District Judge